SAMUEL J. BECKER, complainant,

*v.*

LEHIGH VALLEY RAILROAD COMPANY, defendant-appellant; MANUFACTURERS' FINANCE COMPANY, defendant-respondent.

[Submitted February 17th, 1933.   Decided April 28th, 1933.]

*Mr. Edward A. Markley,* for the appellant.

*Mr. William M. Goldweber,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

This is an interpleader suit, the bone of contention being the balance due from complainant, Becker, of the price of a carload of lumber purchased by him of Harry J. Wylie, Incorporated.   Becker paid the fund into court and goes without day.   The railroad company claims the money by virtue of a writ of attachment against the fund while still in the hands of Becker August 9th, 1928.   Manufacturers' Finance Company claims the fund by virtue of an assignment from Wylie, Incorporated, March 19th, 1928.

The dispute originated in a blunder of the railroad company

in delivering the lumber in violation of instructions; and it may be as well to note at this juncture that from that time onward, the controversy between the parties now before us has related, not to the title to the lumber, but to what Becker owed for it under his purchase from Wylie. The railroad delivered the lumber to Becker on Wylie's order, and collected the freight from Becker. Becker paid in addition to the freight $1,000 on account to Manufacturers' Finance Company as assignee of Wylie, and that payment is not attacked. The balance, $1,173.07, Becker paid into court, and this is the fund in dispute.

The lumber was shipped from the State of Washington by a corporation which for convenience will be called Biles, consigned to its own order in Picton, near Rahway, in this state, with directions to notify Wylie. A negotiable bill of lading with draft attached, drawn on Wylie, went forward through the banks. Surrender of this bill of lading was a prerequisite to delivery by the carrier, but the railroad about March 24th delivered to Becker on Wylie's order without requiring the bill of lading, and the draft was dishonored. Shortly before delivery of the lumber, Wylie had assigned the account against Becker to Manufacturers' Finance Company together with other accounts, and had exhibited a notice of shipment sent him by Biles, and also a statement of account in the form of a bill for the lumber as on an ordinary sale.

Presently it transpired that the railroad had delivered the lumber without obtaining the bill of lading that accompanied the draft. In July, Biles made claim on the railroad company, which was finally settled in December by the railroad paying Biles and taking an assignment of "all sums of money owing to" Biles "and all claims, demands and cause or causes of action" which Biles "has had, now has or may have" against Wylie because of the delivery of the lumber to Becker. The copy of the assignment printed in the case is blank as to date, signature and acknowledgment, but by the depositions it appears that the claim was paid on December 6th, 1928, and that upon such payment the assignment was made. Meanwhile, in August the railroad com-

pany had the attachment in question levied on the balance remaining to be paid by Becker. This attachment was instituted under the Attachment act, but what standing the railroad company had to attach at that time, or what debt was due to it from Wylie, does not appear, as the only attachment papers printed relate to an application to require Becker as garnishee to pay his debt to the sheriff. Until December the situation was that Wylie owed Biles, who had not yet assigned the debt, and that Becker had paid all that was due the railroad, viz., the freight. However, the vice-chancellor assumed that the attachment was based on a valid claim and considered only the priority and merit of the conflicting claims. He expressed the view that the blunder of the railroad company in making delivery materially contributed to the belief of Manufacturers that the transaction was regular; also, that the post card notice and the bill from Biles enabled Wylie to make it appear that Wylie was the owner of the lumber, and that the only interest remaining in Biles was the collection of its bill, and that therefore a situation was created whereby equitably Manufacturers became entitled to the fund. We concur in his reasoning in that regard. Moreover, it would seem that the only right that the railroad had was to pursue the shipment itself; that is to say, to repossess the lumber. We do not know by what right the railroad company could reach out for this balance, unless indeed it be under the assignment from Biles of Biles' claim, not against Becker, but against Wylie, and which in point of time was months after the assignment from Wylie to Manufacturers' Finance Company, and months after the issue of the attachment.

We conclude that the decree under review was right, and should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 14.

*For reversal*—None.